Filed 7/22/14  In re J.P. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.P., a Person Coming Under the Juvenile Court Law. | B251572 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK89471) |
| Plaintiff and Respondent, | |
| v. | |
| Kristen F., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mark A. Borenstein and S. Patricia Spear, Judges.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

Kristen F. (mother) appeals from the juvenile court's jurisdictional and dispositional orders regarding her son J.P. She argues the jurisdictional findings are not supported by substantial evidence. We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Mother has a history of mental health and drug abuse issues, and has failed to reunify with her five oldest children, who have been adopted in other states. In 2011, the Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code section 300, subdivision (b),[1] alleging mother's newborn twins were at risk because of her mental and emotional problems, which included several diagnosed personality disorders, self-mutilation behavior, suicide ideation, and a suicide attempt. DCFS also alleged both parents had a history of substance abuse, and mother had used marijuana during the pregnancy. The petition was sustained, the twins were placed in foster care, and the parents were ordered to complete parenting classes, substance abuse programs, random drug testing, and individual counseling.[2]

J.P. was born in October 2012. In November, DCFS filed a petition under section 300, subdivisions (b) and (j) on his behalf, tracking the language of the sustained petition in the twins' open case. DCFS reported that mother was in compliance with her case plan in that case, except that she had missed several random drug tests between April and August. In August, she had enrolled in a residential supportive services program at Precious Life, a maternity shelter for homeless pregnant adults. DCFS reported that mother would be able to stay at the shelter for two years if she found a job and would be referred to another program if she did not. On DCFS's recommendation, J.P. was released to mother.

After several continuances, a jurisdictional hearing was held in July 2013 before Judge Borenstein. In the meantime, mother had to leave Precious Life because she did

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Father, Zachary P., is not a party to this appeal.

not find work. She briefly moved to a motel, then to the Union Rescue Mission, and eventually was accepted into transitional housing at Hope Gardens, where she could remain for up to two years. Mother consistently tested negative for drugs, was compliant with the programs in which she was enrolled, and participated in job preparation classes. She acknowledged that her previous drug addiction had affected her ability to think clearly, but claimed she had not used drugs since before the twins' birth in 2011. Mother had tried to commit suicide after one of her children had been removed from her care in 2005. Her therapist at Precious Life opined that mother's problems appeared to be situational and the personality disorder diagnoses may have been due to her drug use since she did not exhibit symptoms of such disorders. According to the therapist, mother did not need medication, but needed structure and continued therapy.

Mother's day-to-day interaction with J.P. was assessed as appropriate. But there were concerns about her ability to plan ahead and interact with her children during unmonitored visits with the twins. During one visit, J.P. was observed lying face down on the floor while mother was feeding the twins. During another, mother was distracted by a movie. She did not have a change of clothes for the children, all three of whom had wet themselves. Mother put baby-sized diapers on the twins, who were almost two. There were reports the twins cried a lot during visits, and mother was observed lying on a couch while the children fussed.

DCFS also was concerned that mother had struggled with homelessness and that her long-term plans were unclear. She reportedly intended to start school in the fall of 2013 to earn an Associate's degree, but she also contemplated moving to Texas or back to Tennessee, where she had family. Another point of concern was that mother had kept in touch with father, who had not complied with the case plan in the twins' case and whose reunification services had been terminated. During the pendency of this case, father was imprisoned for child molestation in Washington state.

After DCFS rested at the jurisdictional hearing, mother moved to dismiss the petition for lack of evidence. J.R.'s counsel joined in the motion, claiming mother had "proved herself," and the child was not at risk. DCFS requested that the court take

judicial notice of the orders in the twins' case, and the court stated it had looked at those files. The court found DCFS had not met its burden under section 300, subdivision (b), but it quoted *In re I.J.* (2012) 56 Cal.4th 766 for the proposition that subdivision (j) allowed "'greater latitude to exercise jurisdiction as to a child whose sibling has been found to be abused than the court would have in the absence of that circumstance.'" The court took into consideration the circumstances of the case, J.P.'s age, and mother's continued challenges. It commended mother for the progress she had made, but noted that jurisdiction over J.P. was necessary "for at least some period of time" because, with the twins removed from mother's care, their open case would not provide an opportunity to continue supervising mother's day-to-day interaction with J.P. The court sustained the petition as to father under subdivision (j) as well.

A dispositional hearing was held before Judge Spear in August 2013. J.P. was placed home with mother, and the court ordered family maintenance services, including "Mommy and Me" classes and individual counseling. Mother was to make J.P. available for unannounced home visits. The court noted there may be issues in the future because of father's conviction for child molestation.

This appeal followed.

**DISCUSSION**

Although mother appeals from both the July and August 2013 orders, her arguments are directed solely at the jurisdictional findings. These findings are reviewed for substantial evidence. (*In re E.B.* (2010) 184 Cal.App.4th 568, 574–575.) The juvenile court's determination will not be disturbed unless it exceeds the bounds of reason. (*Id.* at p. 575.)

DCFS contends that the appeal is moot because jurisdiction over the children is proper based on the unchallenged findings as to father, and mother is not prejudiced because the findings against her were based on the previously sustained counts in the twins' case. We exercise our discretion to review mother's challenge to the jurisdictional findings because the difference between being an "offending" and "non-offending"

4

parent "could potentially impact the current or future dependency proceedings" and mother's parental rights. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762.)

Section 300, subdivision (j) applies if a sibling has been abused or neglected as defined in other subdivisions, including subdivision (b), and "there is a substantial risk that the child will be abused or neglected as defined in those subdivisions." (*In re I.J.*, *supra*, 56 Cal.4th at p. 774.) Subdivision (j) requires the court to consider "the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (*Ibid.*) It allows the court to consider the totality of the circumstances, including factors that may not be determinative in adjudicating a petition under other subdivisions, thus giving the court "greater latitude" to exercise jurisdiction over a child whose sibling has been abused or neglected. (*Ibid.*)

Mother attempts to distinguish *In re I.J.*, *supra*, 56 Cal.4th 766, on which the juvenile court relied, because that case involved extreme sexual abuse of a sibling. The court noted that the more extreme the abuse of a sibling, the more appropriate the assumption of jurisdiction over a child may be, but cautioned that a juvenile court was not compelled to assume jurisdiction over all children whenever a sibling is sexually abused. (*Id.* at p. 778, 780.)

Mother argues the juvenile court was not compelled to assume jurisdiction in this case. To the extent she implies the court believed it was required to assume jurisdiction and therefore failed to exercise discretion, the record indicates the court chose to exercise its discretion in light of all the circumstances. Mother argues that the evidence did not support the jurisdictional findings since she had been clean for over two years; any concern about a relapse or a renewed relationship with father was speculative; and jurisdiction could not have been based solely on her lack of stable housing or employment. However, these individual factors may not be reviewed in isolation; their cumulative effect on the court's decision also must be considered.

5

While mother claims her history of mental problems and drug abuse was in the past, the twins were removed from her care at birth because of that history, which had resulted in mother's failure to reunify with five other children. Thus, the risk of harm to the twins and J.P. was premised not on any evidence of neglect of any of those three children, but on mother's earlier history, which in the twins' case had been deemed sufficient to immediately remove the children from mother's care. In J.P.'s case, the court acknowledged mother's progress by allowing her to care for her son. But it reasonably weighed mother's recent progress against J.P.'s young age, her prior history of substance abuse that had affected her thinking in the past so severely as to present itself as a personality disorder, and DCFS's residual concerns, which mother does not address.

Although the danger of a relapse may be speculative in light of mother's abstinence in a structured environment, DCFS was reportedly concerned about her unclear plans for the future, some of which involved moving out of state and presumably out of her recently acquired stable housing. According to her therapist at Precious Life, mother was in need of continued therapy and structure, and the record indicates she had been able to establish the current stability in her life while under DCFS's supervision. There is no evidence in the record that mother ever was able to care for any of her children before J.P., and there were some concerns during her visits with the twins that called into question her judgment as a parent.

We conclude the court did not abuse its discretion in asserting jurisdiction over J.P. in light of his young age, his siblings' open case, mother's long history of substance abuse and ensuing mental problems, her comparatively recent sobriety, and her need of continuing structure, therapy, and help with parenting. The court expressed hope that J.P.'s case will be resolved "in a reasonably short period of time," presumably in mother's favor if she stayed the course.

**DISPOSITION**

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7